## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TAWANDA L. JONES,** | ) | |
| c/o Cornerstone Law Firm | ) | |
| 5821 NW 72nd Street | ) | |
| Kansas City, MO 64151 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| **LABORATORY CORPORATION OF** | ) | **REQUEST FOR JURY TRIAL** |
| **AMERICA HOLDINGS,** | ) | |
| *Registered Agent:* | ) | |
| CORPORATION SERVICE COMPANY | ) | |
| 1100 SW Wanamaker Rd., Ste. 103 | ) | |
| Topeka, KS 66604 | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Tawanda L. Jones by and through her attorney, and for her cause of action against Defendant Laboratory Corporation of America Holdings states and alleges as follows:

### Parties and Jurisdiction

1.      This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981.

2.      Plaintiff Tawanda L. Jones (hereinafter "Plaintiff") is a citizen of the United States, domiciled in Lenexa, Johnson County, Kansas.

3.      Defendant Laboratory Corporation of America Holdings (hereinafter "Labcorp") is a for-profit corporation incorporated under the laws of Delaware, with its principal place of business located in Burlington, North Carolina.

4.      Labcorp conducts substantial and continuous business in the State of Kansas.

5.    In each of 20 or more calendar weeks in the current or preceding calendar year, Labcorp employed fifteen (15) or more employees.

6.    In each of 20 or more calendar weeks in the current or preceding calendar year, Labcorp employed five hundred (500) or more employees.

7.    At all relevant times, Labcorp was engaged in interstate commerce.

8.    Labcorp is an employer within the meaning of Title VII.

9.    This Court has personal jurisdiction over Labcorp because Labcorp conducts substantial and continuous business within the District of Kansas.

10.    Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331 as some or all of Plaintiff's claims arise under the laws of the United States.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

### Administrative Procedures

12.    On or about July 3, 2024, Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") against Laboratory Corporation of America and Lab Corp Kansas, Inc., alleging discrimination based on her race and retaliation.

13.    On or about October 22, 2024, Labcorp submitted a Position Statement in response to Plaintiff's charges of discrimination.

14.    Labcorp had notice of Plaintiff's charges of discrimination against Laboratory Corporation of America and Lab Corp Kansas, Inc., while said charges were pending with the EEOC.

15.    Labcorp had the opportunity to participate in conciliation proceedings with the EEOC with regard to Plaintiff's charges of discrimination.

16.    On or about January 27, 2025, the EEOC issued Plaintiff Notices of Right to Sue ("RTSs") with regard to her claims.

17.    This lawsuit was filed within ninety (90) days of the issuance of the EEOC's RTSs.

18.    The aforesaid Charges of Discrimination provided the EEOC and the KHRC sufficient opportunity to investigate the full scope of the controversy between the parties, and accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC or KHRC investigation which could reasonably be expected to have grown out of the Charges of Discrimination.

19.    Plaintiff has satisfied all private administrative and judicial prerequisites and judicial prerequisites to the institution of this action.

20.    This Complaint is filed within the applicable statute of limitations.

**Additional Factual Allegations**

21.    Plaintiff began working for Labcorp in its processing department at its Overland Park, Kansas, location in approximately April 2023 as a temporary employee.

22.    Labcorp hired Plaintiff as an employee in approximately August 2023.

23.    Plaintiff is Black.

24.    Plaintiff's job as a "processor" at Labcorp was to process urine, fecal, blood, and other biological samples for testing on behalf of medical facilities.

25.    When Plaintiff began working for Labcorp, each processor, including Plaintiff, was responsible for transporting their own specimens from an assortment of pending samples from the shelf in the lab where they were waiting to their own workstation for processing.

26.     In approximately January 2024, Labcorp changed the above-described process such that designated "lead processors" in the lab were to deliver of bins of pending specimens to every workstation instead of each processor gathering them for themselves.

27.     On or about February 1, 2024, one of the lead processors ("T.W.") approached Plaintiff's workstation with a bin of specimens and slammed it down on the counter next to Plaintiff.

28.     T.W. is white.

29.     Although T.W. was a lead processor, she had no supervisory authority over Plaintiff or the other processors.

30.     After T.W. slammed the bin of specimens onto Plaintiff's workstation, Plaintiff promptly reported the incident to Labcorp's compliance department.

31.     In Plaintiff's report to Labcorp's compliance department, Plaintiff indicated that T.W. treated Plaintiff differently than their white coworkers.

32.     Plaintiff also reported T.W.'s conduct to two supervisors ("J.T." and "J.C.").

33.     Plaintiff did not tell any of her coworkers that she had reported T.W. to J.T., J.C., or Labcorp's compliance department.

34.     J.C. told Plaintiff that she would reassign a different lead processor to deliver Plaintiff's assigned specimens to her workstation instead of T.W.

35.     However, T.W. continued to be the one who delivered Plaintiff's samples.

36.     Shortly after her meeting with J.T. and J.C. in early February 2024 regarding T.W.'s behavior, Plaintiff asked J.C. if Plaintiff could transfer to the phlebotomy department.

37.     J.C. told Plaintiff was not eligible to transfer departments.

38.     In approximately late February 2024, J.T. transferred Plaintiff to another workstation that did not require a lead's assistance.

39.     Despite J.T. moving Plaintiff to a different workstation, T.W. continued to treat Plaintiff in a hostile manner.

40.     On or around March 8, 2024, two coworkers ("M.H." and "K.B.") aggressively threw a specimen at Plaintiff, called her names like "rat" and "bitch," told Plaintiff she needed to "find another job," and threatened to fight Plaintiff.

41.     K.B. is white.

42.     Both K.B. and M.H. were known at Labcorp's Overland Park location during Plaintiff's employment to be friends with J.C.

43.     J.C. was present for and witnessed the entire interaction between Plaintiff and M.H. and K.B. on or about March 8, 2024.

44.     On or about March 12, 2024, J.T. told Plaintiff that there would be a department meeting that day to address the March 8 incident.

45.     However, no meeting was held.

46.     After there was no apparent effort on March 12, 2024, to further address her March 8 interaction with M.H. and K.B., Plaintiff promptly made another report to Labcorp's compliance department.

47.     On or about March 20, 2024, Plaintiff had another confrontation with T.W.

48.     Specifically, T.W. again slammed another bin next to Plaintiff at her workstation.

49.     T.W. then picked up several samples and threw them toward Plaintiff.

50.     Plaintiff asked T.W. why she was acting like this, and T.W. responded that she could do whatever she wanted.

51.      T.W. instructed Plaintiff to go home even though T.W. had no supervisory authority.

52.      Shortly thereafter, J.T. also told Plaintiff to go home.

53.      Upon information and belief, Plaintiff alleges that T.W. was allowed to remain at work on March 20, 2024.

54.      Shortly after Plaintiff was sent home on or about March 20, 2024, J.T. and J.C. called Plaintiff and told her that her employment was being suspended.

55.      J.T. and J.C. did not give Plaintiff an indication as to why her employment was being suspended.

56.      Upon information and belief, Plaintiff alleges that T.W.'s employment was not suspended on or around March 20.

57.      On or about April 10, 2024, J.T. sent a text message to Plaintiff, informing Plaintiff that her employment with Labcorp had been terminated.

58.      J.T.'s text message to Plaintiff on or about April 10, 2024, was the first communication containing any substantive information Plaintiff received from Labcorp after her employment was suspended on or around March 20.

59.      Neither J.T. nor any other representative for Labcorp asked Plaintiff to bring her badge back to Labcorp after her employment was terminated.

60.      In approximately early June 2024, Plaintiff contacted J.T. to inquire how she could get back her personal belongings that were still in her locker at Labcorp's facility.

61.      J.T. responded that Plaintiff could "just come in" to get them.

62.      Plaintiff went to Labcorp's facility on or about June 4, 2024, to retrieve her personal belongings.

63.     Plaintiff's badge was still operational on or about June 4, 2024, so she used it to enter the facility.

64.     As Plaintiff walked through the facility on or about June 4, she passed by J.T.

65.     J.T. did not attempt to stop Plaintiff when they passed each other on or about June 4.

66.     When Plaintiff arrived at Labcorp's facility on or about June 4, she went straight to her locker, gathered her personal belongings and left.

67.     Plaintiff did not stop to speak to any employees while she was in Labcorp's facility on or about June 4.

68.     Plaintiff was only inside the facility on or about June 4, 2024, for approximately ten (10) minutes at most.

69.     Plaintiff did not go to any areas where sample processing was occurring when she was inside Labcorp's facility on or about June 4, 2024.

70.     Plaintiff learned after she left Labcorp's facility on or about June 4, 2024, that Labcorp had reported her presence to law enforcement.

## COUNT I
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Race Discrimination – Termination

71.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

72.     Plaintiff is Black and therefore a member of a protected class based on her race.

73.     Labcorp terminated Plaintiff's employment.

74.     Plaintiff's membership in a protected class was at least a determining factor in Labcorp's decision to terminate Plaintiff's employment.

75.     At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

76.     Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

77.     Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

78.     As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Labcorp, based on her race, in violation of Title VII.

79.     As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

80.     As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

81.     By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

82.     Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

83.     Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided for in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Labcorp for economic damages, including, but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT II
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Race Discrimination – Hostile Work Environment**

84.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

85.     Plaintiff is Black and therefore a member of a protected class based on her race.

86.     Throughout Plaintiff's employment, Defendants subjected Plaintiff to severe, pervasive, and unwelcome harassment based on her race.

87.     The unwelcome, offensive conducted engaged in by Plaintiff's coworkers includes but is not limited to the following:

    a.  Repeatedly slamming bins of biological samples down on Plaintiff's workstation;

    b.  Throwing biological samples at Plaintiff;

    c.  Threatening to fight Plaintiff; and

    d.  Calling Plaintiff derogatory names such as "rat" and "bitch.".

88.     The actions and conduct of the above-described perpetrator(s), as set forth herein, constituted unwelcome conduct of a race-based nature.

89.     The racial harassment to which Plaintiff was subjected affected a term, condition, or privilege of her employment because the conduct was continuous, outrageous, humiliating, and reasonably interfered with her ability to perform the functions of her employment.

90.     The actions and conduct of the above-described perpetrator(s), as set forth herein, created an abusive, hostile, offensive, and intimidating work environment which detrimentally affected Plaintiff.

91.     The conduct described herein would have detrimentally affected a reasonable person of the same race in Plaintiff's position.

92.     Plaintiff's race was a motivating or determining factor in the harassment to which she was subjected.

93.     Labcorp knew or should have known of the hostile work environment to which Plaintiff was subjected but failed to exercise reasonable care to prevent and promptly correct it.

94.     At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

95.     Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

96.     Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

97.     As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Labcorp, based on her race, in violation of Title VII.

98.     As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

99.     As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

100.     By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

101.     Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

102.     Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided for in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Labcorp for economic damages, including, but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Retaliation– Termination

103.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

104.     By making good faith reports of discrimination, Plaintiff engaged in a protected action.

105.     Labcorp terminated Plaintiff's employment.

106.     Plaintiff's good faith reports of discrimination were a determining factor in Labcorps's decision to terminate her employment.

107.     At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

108.     Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

109.     Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

110.     As shown by the foregoing, as a result of Plaintiff's good faith opposition to Labcorp's discriminatory conduct, Plaintiff suffered intentional retaliation at the hands of Labcorp based on her protected activity in violation of Title VII.

111.     As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

112.     As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

113.     By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized retaliation against Plaintiff.

114.     Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

115.     Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Labcorp for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Retaliation – Hostile Work Environment**

116.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

117.    By making good faith reports of discrimination, Plaintiff engaged in a protected action.

118.    After Plaintiff made good-faith reports of sex discrimination, Labcorp subjected Plaintiff to severe, pervasive, and unwelcome harassment based on her race.

119.    The unwelcome, offensive conducted engaged in by Plaintiff's coworkers includes but is not limited to the following:

    a.  Repeatedly slamming bins of biological samples down on Plaintiff's workstation;

    b.  Throwing biological samples at Plaintiff;

    c.  Threatening to fight Plaintiff; and

    d.  Calling Plaintiff derogatory names such as "rat" and "bitch.".

120.    The actions and conduct of the above-described perpetrator(s), as set forth herein, constituted unwelcome conduct of a retaliatory nature.

121.    The retaliatory harassment to which Plaintiff was subjected affected a term, condition, or privilege of her employment because the conduct was continuous, outrageous, humiliating, and reasonably interfered with her ability to perform the functions of her employment.

122.    The actions and conduct of the above-described perpetrator(s), as set forth herein, created an abusive, hostile, offensive, and intimidating work environment which detrimentally affected Plaintiff.

123.    The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

124.    Plaintiff's good faith reports of discrimination were a determining factor in the harassment to which she was subjected.

125.    Labcorp knew or should have known of the hostile work environment to which Plaintiff was subjected but failed to exercise reasonable care to prevent and promptly correct it.

126.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

127.    Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

128.    Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

129.    As shown by the foregoing, as a result of Plaintiff's good faith opposition to Labcorp's discriminatory conduct, Plaintiff suffered intentional retaliation at the hands of Labcorp based on her protected activity in violation of Title VII.

130.    As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

131.    As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

132.    By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized retaliation against Plaintiff.

133.    Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus

justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

134.     Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Labcorp for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
### Violation under 42 U.S.C. § 1981
### Race Discrimination – Termination

135.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

136.     Plaintiff is Black and therefore a member of a protected class based on her race.

137.     Labcorp terminated Plaintiff's employment.

138.     Plaintiff's membership in a protected class was a but-for cause of Labcorp's decision to terminate Plaintiff's employment.

139.     At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or

ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

140.    Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

141.    Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including § 1981.

142.    Plaintiff suffered intentional discrimination at the hands of Labcorp based on her race in violation of § 1981.

143.    As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

144.    As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

145.    By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

146.    Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

147.    Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Labcorp for economic damages, including but not limited to back-pay and lost benefits; for

compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VI
**Violation under 42 U.S.C. § 1981**
**Race Discrimination – Hostile Work Environment**

148.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

149.     Plaintiff is Black and therefore a member of a protected class based on her race.

150.     Throughout Plaintiff's employment, Defendants subjected Plaintiff to severe, pervasive, and unwelcome harassment based on her race.

151.     The unwelcome, offensive conducted engaged in by Plaintiff's coworkers includes but is not limited to the following:

   a.   Repeatedly slamming bins of biological samples down on Plaintiff's workstation;

   b.   Throwing biological samples at Plaintiff;

   c.   Threatening to fight Plaintiff; and

   d.   Calling Plaintiff derogatory names such as "rat" and "bitch.".

152.     The actions and conduct of the above-described perpetrator(s), as set forth herein, constituted unwelcome conduct of a race-based nature.

153.     The racial harassment to which Plaintiff was subjected affected a term, condition, or privilege of her employment because the conduct was continuous, outrageous, humiliating, and reasonably interfered with her ability to perform the functions of her employment.

154.    The actions and conduct of the above-described perpetrator(s), as set forth herein, created an abusive, hostile, offensive, and intimidating work environment which detrimentally affected Plaintiff.

155.    The conduct described herein would have detrimentally affected a reasonable person of the same race in Plaintiff's position.

156.    Plaintiff's race was a but-for cause of the harassment to which she was subjected.

157.    Labcorp knew or should have known of the hostile work environment to which Plaintiff was subjected but failed to exercise reasonable care to prevent and promptly correct it.

158.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

159.    Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

160.    Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including § 1981.

161.    Plaintiff suffered intentional discrimination at the hands of Labcorp based on her race in violation of § 1981.

162.    As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

163.    As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

164.    By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

165.    Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

166.    Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Labcorp for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VII
### Violation under 42 U.S.C. § 1981
### Retaliation– Termination

167.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

168.    By making good faith reports of discrimination, Plaintiff engaged in a protected action.

169.    Labcorp terminated Plaintiff's employment.

170.    Plaintiff's good faith reports of discrimination were a determining factor in Labcorps's decision to terminate her employment.

171.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

172.    Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

173.    Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including § 1981.

174.    As shown by the foregoing, as a result of Plaintiff's good faith opposition to Labcorp's discriminatory conduct, Plaintiff suffered intentional retaliation at the hands of Labcorp based on her protected activity in violation of § 1981.

175.    As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

176.    As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

177.     By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized retaliation against Plaintiff.

178.     Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

179.     Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Labcorp for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VIII
### Violation under 42 U.S.C. § 1981
### Retaliation – Hostile Work Environment

180.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

181.     By making good faith reports of discrimination, Plaintiff engaged in a protected action.

182.     After Plaintiff made good-faith reports of sex discrimination, Labcorp subjected Plaintiff to severe, pervasive, and unwelcome harassment based on her race.

183.    The unwelcome, offensive conducted engaged in by Plaintiff's coworkers includes but is not limited to the following:

    a.    Repeatedly slamming bins of biological samples down on Plaintiff's workstation;

    b.    Throwing biological samples at Plaintiff;

    c.    Threatening to fight Plaintiff; and

    d.    Calling Plaintiff derogatory names such as "rat" and "bitch.".

184.    The actions and conduct of the above-described perpetrator(s), as set forth herein, constituted unwelcome conduct of a retaliatory nature.

185.    The retaliatory harassment to which Plaintiff was subjected affected a term, condition, or privilege of her employment because the conduct was continuous, outrageous, humiliating, and reasonably interfered with her ability to perform the functions of her employment.

186.    The actions and conduct of the above-described perpetrator(s), as set forth herein, created an abusive, hostile, offensive, and intimidating work environment which detrimentally affected Plaintiff.

187.    The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

188.    Plaintiff's good faith reports of discrimination were a but-for cause of the harassment to which she was subjected.

189.    Labcorp knew or should have known of the hostile work environment to which Plaintiff was subjected but failed to exercise reasonable care to prevent and promptly correct it.

190.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Labcorp; were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or

ratified by Labcorp, thus making Labcorp liable for said actions under the doctrine of *respondeat superior*.

191.    Labcorp failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

192.    Labcorp failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including § 1981.

193.    As shown by the foregoing, as a result of Plaintiff's good faith opposition to Labcorp's discriminatory conduct, Plaintiff suffered intentional retaliation at the hands of Labcorp based on her protected activity in violation of § 1981.

194.    As a direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

195.    As a further direct and proximate result of Labcorp's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

196.    By failing to take prompt and effective remedial action, Labcorp in effect condoned, ratified, and/or authorized retaliation against Plaintiff.

197.    Labcorp's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Labcorp or to deter it and other companies from like conduct in the future.

198.    Plaintiff is entitled to recover reasonable attorneys' fees from Labcorp as provided in 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Labcorp for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: _/s/ Joshua P. Wunderlich_____
    Joshua P. Wunderlich D. Kan. #78506
    j.wunderlich@cornerstonefirm.com
    5821 NW 72nd St.
    Kansas City, Missouri 64151
    Telephone      (816) 581-4040
    Facsimile      (816) 741-8889

    ATTORNEY FOR PLAINTIFF